OPINION
{¶ 1} Appellant, Samuel Johnson, appeals his conviction and sentence following a jury verdict of guilty of aggravated burglary and two counts of felonious assault. Appellant challenged the sufficiency and weight of the evidence, the court's jury instructions, and the constitutionality of his sentence. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} Lakesha Clark testified that as of December 24, 2005, she had resided with her fourteen-month old daughter on N. State St. in Painesville, Ohio for about one month. On that date she had a Christmas get-together for appellant, her daughter, and some friends. Appellant, who is the natural father of Ms. Clark's daughter, spent the afternoon drinking. While visiting with her guests, Ms. Clark was cooking dinner for them.
 {¶ 3} At one point appellant asked one of their friends Erick Bolden, in Ms. Clark's presence, what he would do if his girlfriend had left him and began a relationship with another man. Ms. Clark understood appellant was referring to her because in the past she had left appellant for another. Appellant became increasingly angry and upset with Ms. Clark, and she told him they cannot even get together anymore without him starting something.
 {¶ 4} As the evening wore on, everyone left the apartment except Ms. Clark, her daughter, appellant, and Mr. Bolden. Ms. Clark and appellant started arguing in the kitchen. She was at the sink preparing food with her back facing appellant. Ms. Clark's daughter was in her highchair in the kitchen. During this argument, appellant became violent with Ms. Clark. He pulled her hair from behind on the left side of her head with such force that her hair came out of her scalp in clumps. At one point she felt hot water hit her leg. Appellant is six foot tall and weighs 240 pounds. Ms. Clark is five foot two inches.
 {¶ 5} Appellant and Ms. Clark began a physical altercation in the kitchen which moved into the living room. At this time Ms. Clark's child was screaming in her highchair. Ms. Clark told appellant she was leaving the apartment to call the police, *Page 3 
hoping he would leave. She then left the apartment. Ms. Clark asked Mr. Bolden to take her daughter out of the apartment, which he did. Ms. Clark's apartment is on the third floor of the building. She ran out of the apartment, and went down to the second floor to wait for appellant to leave.
 {¶ 6} When Ms. Clark returned, the apartment was empty as everyone had left. She saw the food that she had been cooking was thrown all over the walls and floor of the apartment. She saw her kitchen pots had been thrown all over the floor. She locked the door. Shortly thereafter, she heard a heavy knock at the door. She picked up a kitchen knife to protect herself. She asked who it was and appellant said it was him. He told her to open the door, but Ms. Clark refused. Suddenly, appellant kicked the door open. Appellant pushed Ms. Clark and she fell on her back on the couch in the living room.
 {¶ 7} Appellant jumped on top of Ms. Clark and started to stab her with a butcher knife. While appellant was on top of her, he stabbed her four times, twice on her right arm, once in her stomach, and once in her chest. While he was stabbing Ms. Clark, he told her she had "messed up" their family.
 {¶ 8} Mr. Bolden returned to Ms. Clark's apartment. She yelled to him that appellant was stabbing her. Mr. Bolden picked up a kitchen pot and hit appellant with it. Ms. Clark then attempted to escape into the bathroom and appellant came in behind her. She closed the door, but he pushed it open. He came charging at Ms. Clark and pushed her into the bathtub. The shower curtain and rod came off the wall and fell into the bathtub. *Page 4 
 {¶ 9} Appellant was feeling around for something in the shower curtain which Ms. Clark believed was the knife he had used to stab her. Suddenly, he stood up and left the apartment. A security video camera positioned outside Ms. Clark's apartment showed appellant coming out of her suite and reaching into a window sill in the stairwell between the second and third floor. Ms. Clark walked out of the apartment and started going downstairs for help.
 {¶ 10} Outside the police and EMS had arrived. Paramedics put Ms. Clark in an ambulance. They also put Ms. Clark's daughter in the ambulance because she had been burnt on her stomach and legs. In the emergency room of Lake East Hospital in Painesville, hospital staff stitched Ms. Clark's stab wounds. She has scars from these wounds which are still visible. Ms. Clark's daughter was treated at Metro Hospital in Cleveland for thirty days for second and third degree burns.
 {¶ 11} At about 10:00 p.m., Painesville Police had received a phone call of a fight or disturbance in progress at Ms. Clark's apartment. Officer Brian Avery testified that on arrival Erick Bolden yelled out to him, "you got to hurry up, she's * * * getting stabbed." As the officer reached the second floor, a male who he later discovered was the appellant, was coming down the stairs and said, "it's upstairs."
 {¶ 12} As the officer went up to the third floor, he saw Ms. Clark coming down the stairs. She was obviously injured and had blood all over her. Her shirt was partially torn off, and she had a large wound on her arm which the officer observed. She said the male that just came down the stairs had done this to her.
 {¶ 13} Off. Avery went into Ms. Clark's apartment. He saw the door was damaged and open. He saw fresh blood on the floor and clumps of hair on the floor in *Page 5 
the living room and in the kitchen. He saw a large mass of blood in the kitchen. Food was dripping off the walls. He saw blood on the walls in the living room. He saw drops of blood in the hallway leading to the bedrooms. He saw a large butcher knife on a coffee table in the living room.
 {¶ 14} Off. Avery testified that he saw signs of a struggle in the bathroom. He saw blood on the floor, walls, and shower curtain. He saw the shower curtain rod had been forcibly pulled down and laying in the tub.
 {¶ 15} The officer testified that before entering the apartment, he had radioed other officers to stop the male that was leaving the apartment. Appellant had been placed in Off. Avery's cruiser to be transported to the police station to be charged. He testified appellant did not require any medical attention. Appellant did not request any medical treatment, did not have any visible injuries, and did not report that he had been injured. However, there was blood on the sleeve of appellant's jacket so the officer collected it as evidence.
 {¶ 16} Off. William Smith of the Painesville Police Department was also assigned to go to Ms. Clark's apartment. On his arrival Ms. Clark was sitting on her couch in the living room. He observed a six inch long cut on Ms. Clark's right arm, which he characterized as deep. He testified it was four inches above her elbow. She was bleeding and a towel had been wrapped over it to control the bleeding.
 {¶ 17} Off. Smith saw drops of blood on the kitchen countertop, on the living room floor and coffee table, in the hallway, and on the inside frame of the bathroom door. He saw items knocked over in the bathroom. He saw several drops of blood that *Page 6 
had been smeared on the shower curtain. There was also a spot of blood on the side of the bathtub.
 {¶ 18} Off. Smith testified he reviewed the security videotape of the area just outside of Ms. Clark's apartment. It showed the appellant leaving her apartment going up to a window that was between the second and third floor of the apartment hallway, and putting his hand outside the window on the window ledge. Off. Smith then went to that window ledge and found the knife. There was blood on the tip of the knife. DNA testing showed the blood on the knife and on appellant's jacket was that of Ms. Clark.
 {¶ 19} On February 10, 2006, appellant was indicted on one count of attempted murder, a felony of the first degree, in violation of R.C.2903.02; one count of aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(1); one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1); one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2); and one count of endangering children, a felony of the third degree, in violation of R.C. 2919.22(A).
 {¶ 20} Appellant pleaded not guilty, and the case was presented to a jury beginning on October 11, 2006. Prior to trial, the state dismissed the attempted murder charge. At trial appellant was found guilty of aggravated burglary and two counts of felonious assault. He was found not guilty of endangering children.
 {¶ 21} Appellant was sentenced on November 20, 2006 to five years in prison for aggravated burglary and seven years on each count of felonious assault. The two seven year terms were to run concurrent to each other, and consecutive to the five-year *Page 7 
term, for a total of 12 years in prison. Appellant appeals his conviction and sentence, asserting eight assignments of error. Appellant asserts for his first assignment of error:
 {¶ 22} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT DENIED HIS MOTION FOR ACQUITTAL MADE PURSUANT TO CRIM.R. 29(A)."
 {¶ 23} Under his first assignment of error, appellant argues the trial court erred in denying his Crim.R. 29 motion because the state failed to present sufficient evidence to sustain the jury's verdict.
 {¶ 24} In State v. Bridgeman (1978), 55 Ohio St.2d 261, the Court held:
 {¶ 25} "A court shall not order an entry of judgment of acquittal if evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. Id. at paragraph one of the syllabus.
 {¶ 26} The standard of review under Crim.R. 29 is sufficiency of the evidence. State v. Brady (July 9, 2001), 5th Dist No. 2000 CA 00223, 2001 Ohio App. LEXIS 3266, *13. In reviewing whether evidence was sufficient to support a conviction, an appellate court's function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 273. The relevant inquiry does not involve how the appellate court might interpret the evidence. Id. Rather, the question is, after viewing the evidence in a light most favorable to the prosecution, whether the jury could have found the essential elements of the crime *Page 8 
proven beyond a reasonable doubt. Id. The Court in Jenks thus modified the standard previously established in Bridgeman.
 {¶ 27} Appellant concedes that he used force to enter Ms. Clark's apartment, but argues the state failed to prove two elements: (1) that he trespassed into Ms. Clark's apartment; and (2) that he did so with purpose to inflict physical harm. We do not agree.
 {¶ 28} R.C. 2911.11, aggravated burglary, provides in pertinent part:
 {¶ 29} "(A) No person, by force * * * shall trespass in an occupied structure * * * when another person * * * is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
 {¶ 30} "(1) The offender inflicts * * * physical harm on another;
 {¶ 31} "(2) The offender has a deadly weapon * * * on or about the offender's person or under the offender's control."
 {¶ 32} A person commits a trespass when, without privilege to do so, he knowingly enters or remains on the land or premises of another. R.C.2911.21(A)(1). Appellant concedes that the privilege of an invited guest to be on the premises is terminated if he commits a violent act.
 {¶ 33} In State v. Steffen (1987), 31 Ohio St.3d 111, the court held that even assuming a lawful initial entry, one's privilege to remain on another's premises terminates the moment he commits an assault on the victim. Evidence of an assault gives rise to an inference that the actor is no longer privileged to remain on the victim's property and that he knew the privilege had been terminated. Id. at 115. The Supreme Court held: "In our view, the inference is so strong that it excludes the possibility of *Page 9 
drawing from the same facts any other reasonable inference supporting a theory of innocence." Id.
 {¶ 34} In analyzing a motion for acquittal, the reviewing court is bound to view the evidence presented in a light most favorable to the state, not to assess the credibility of the witnesses. Jenks, supra. Ms. Clark testified appellant was not living with her at her apartment and so was merely a guest. Appellant ordered Ms. Clark to open the door, and when she refused, he kicked it in. From the moment that appellant kicked in her door, any privilege he once had to be in her apartment terminated. We hold that the state presented sufficient evidence that appellant trespassed in Ms. Clark's apartment so that the court did not err in denying his motion for acquittal concerning this element.
 {¶ 35} Appellant argues that he could not be guilty of a trespass because Ms. Clark's testimony that he did not live with her was inconsistent. He argues that inconsistencies in her testimony render the state's evidence legally insufficient to convict him of aggravated burglary. Such argument fails to recognize the difference between analyzing the sufficiency and weight of the evidence. In reviewing the sufficiency of the evidence, the relevant inquiry is whether the state has presented evidence on each element of the crime. In contrast, as more fully explained under our analysis of appellant's second assignment of error, manifest weight contests the believability of the witnesses. Appellant's argument challenging Ms. Clark's testimony due to alleged inconsistencies is an argument appropriate on a challenge to the weight rather than the sufficiency of the evidence.
 {¶ 36} In any event, Ms. Clark's testimony that she did not need to invite appellant to her Christmas party because he was already there; that he had been to her *Page 10 
house for a couple days when she first moved in; and that he kept some of his clothes at her apartment is not inconsistent with her testimony that he did not live there with her. Evidence that appellant was an occasional overnight guest does not mean he was living with her. There is no evidence in the record that appellant ever lived in Ms. Clark's apartment.
 {¶ 37} Further, Latasha Collins, who resides on the second floor directly below Ms. Clark, testified she never knew Ms. Clark to have a male living with her and if there had been, Ms. Collins would have seen him as he went to the third floor.
 {¶ 38} Appellant next argues that the state failed to present sufficient evidence to show he entered Ms. Clark's apartment with the purpose to inflict harm on her. Purpose to inflict harm, however, is not an element of aggravated burglary. The purpose prohibited by the statute is the purpose to commit any criminal offense. Appellant has not challenged this element. He has therefore waived any failure on the part of the state to present sufficient proof of this element. However, if appellant meant to challenge the sufficiency of the state's evidence concerning his purpose to commit any criminal offense, e.g., an assault on Ms. Clark, such argument is not well-taken.
 {¶ 39} Purpose is a decision of the mind to do an act with a conscious objective of engaging in specific conduct or producing a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct. 4 OJI 409.01. *Page 11 
 {¶ 40} The purpose with which a person does an act is determined from the manner in which it is done, the means or weapon used, and all the other facts and circumstances in evidence. 4 OJI 409.01.
 {¶ 41} Prior to appellant kicking in Ms. Clark's door, he had pulled a large clump of hair out of her head and physically fought with her in the kitchen and living room. He was angry and agitated with her because in the past she had left him and had a relationship with another man. Appellant left Ms. Clark's apartment for a period of time and later returned to the apartment. He pounded on the door and ordered Ms. Clark to open it for him. She refused. Appellant kicked in the door; forced his way into the apartment; pushed her on the couch; and stabbed her four times with a butcher knife. When Ms. Clark ran to the bathroom to escape from appellant, he came after her and pushed her into the bathtub. We hold the state presented sufficient evidence that appellant acted with the purpose to commit an assault against Ms. Clark in her apartment.
 {¶ 42} Appellant next argues that the state failed to present sufficient evidence to prove he acted knowingly in causing serious physical harm or causing or attempting to cause physical harm by means of a deadly weapon.
 {¶ 43} R.C. 2903.11(A) provides:
 {¶ 44} "(A) No person shall knowingly do either of the following:
 {¶ 45} "(1) Cause serious physical harm to another * * *;
 {¶ 46} "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *." *Page 12 
 {¶ 47} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result * * *. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 48} Ohio Jury Instructions address how this mental state is determined, as follows:
 {¶ 49} "Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the defendant an awareness of the probability that" his acts will probably cause serious physical harm to Ms. Clark or physical harm by means of a deadly weapon. 4 OJI 409.11.
 {¶ 50} This mental state was sufficiently proven under both counts of felonious assault when appellant threw Ms. Clark on the couch and stabbed her four times with a butcher knife in her right arm, stomach and chest. One of the stab wounds to her arm was six inches in length and described by Off. Smith as deep. Stabbing Ms. Clark, especially in the area of her vital organs, further demonstrates that appellant was aware his conduct would probably result in serious physical harm or physical harm with a deadly weapon.
 {¶ 51} This court has held that where a defendant admits he knew that stabbing a person in a vital area would cause serious physical harm, this is sufficient proof the defendant knowingly caused physical harm with a knife. State v. DeRito (Sept. 11, 1998), 11th Dist. No. 97-L-052, 1998 Ohio App. LEXIS 4257, *6. *Page 13 
 {¶ 52} The Fifth Appellate District in State v. Hoke (July 17, 2000), 5th Dist. No. 99-CA-19, 2000 Ohio App. LEXIS 3211, held that an intent to kill the victim may be inferred from the defendant's use of a knife to stab her, including wounds which struck the victim in vital organs such as the stomach and chest. The court held that such evidence is sufficient to prove the defendant acted purposely, with the specific intent to cause the victim's death. Id. at *8. "When knowledge suffices to establish an element of an offense, then purpose is also sufficient culpability for such element." R.C. 2901.22(E).
 {¶ 53} It should be noted that Ms. Clark's testimony was corroborated by Mr. Bolden, who yelled to the officers to hurry up to Ms. Clark's apartment because she was being stabbed. Her testimony was also corroborated by her neighbor Ms. Collins, who testified she heard "a lot of commotion, yelling, screaming, and baby screaming" for five to ten minutes coming from Ms. Clark's apartment at the time. The knife and appellant's jacket with Ms. Clark's blood further corroborates that appellant stabbed her. The police officers' testimony concerning their discovery of blood on the couch and in the living room and bathroom corroborates Ms. Clark's testimony. The four separate stab wounds corroborate her testimony that appellant stabbed her four times. We hold the state presented sufficient evidence that appellant was aware his use of a knife to stab Ms. Clark would cause serious physical harm or physical harm with a knife.
 {¶ 54} Again, appellant's argument that Ms. Clark's testimony is internally inconsistent and inconsistent with other evidence is appropriate on a challenge to the weight rather than the sufficiency of the evidence.
 {¶ 55} Appellant's first assignment of error is without merit. *Page 14 
 {¶ 56} Appellant asserts the following for his second assignment of error:
 {¶ 57} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT RETURNED A VERDICT OF GUILTY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 58} Evidential weight concerns the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52. If, on weighing the evidence, the jury finds the greater amount of credible evidence sustains the issue that a party seeks to establish, that party will be entitled to its verdict. "Weight is not a question of mathematics, but depends upon its effect in inducing belief." Id., citing Black's Law Dictionary (6th ed. 1990), 1594. Thus, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-*15.
 {¶ 59} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175. Hence, the role of a reviewing court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion.State v. Brown, 11th Dist. No. 2002-T-0077, 2003-Ohio-7183, at ¶ 52, citing Thompkins, supra, at 390. However, an appellate court must defer to the factual findings of the jury regarding the *Page 15 
weight to be given the evidence and credibility of the witnesses.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 60} When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123.
 {¶ 61} To be sure, the factfinder is free to believe all, some, or none of the testimony of each witness appearing before it.Brown, supra, at ¶ 53.
 {¶ 62} Appellant argues that various inconsistencies regarding the "confrontation" render his conviction against the manifest weight of the evidence. He argues that because at one point during her extensive direct examination, Ms. Clark agreed with the assistant prosecutor that she "held her own" during her struggle with appellant in the kitchen, it shows she was not a "meek victim" of a crime. However, the victim of a crime does not have to be timid, meek, or submissive for a crime to be committed. The fact that Ms. Clark struggled with appellant to defend herself and did not willingly submit to his attack does not contradict her testimony that appellant, without any provocation on her part, stabbed her with a knife. In any event, the phrase "holding her own" is ambiguous at best. This extremely minor and isolated piece of testimony does not represent a contradiction, let alone the exceptional case in which the evidence weighs heavily against conviction.
 {¶ 63} Next, appellant suggests that because a table and lamp in the living room, which, he argues, were in the path from the door to the couch, were undisturbed, the attack did not occur. However, on cross examination, appellant only asked Ms. Clark if *Page 16 
she knew how a nearby lamp on a coffee table remained intact during the attack. The fact that he happened to leave a lamp on a heavy table undisturbed does not diminish the strength of the state's evidence in this case, particularly where appellant damaged and disrupted almost everything else in that apartment. Our review of the evidence shows the coffee table is not in the path from the front door to the couch where the stabbing occurred. Thus, the fact that the lamp or table may not have been disturbed is of no consequence.
 {¶ 64} While appellant admits his attack on Ms. Clark caused her to experience "significant" bleeding in the bathroom, he argues the small amount of her blood on the couch in the living room somehow diminishes the weight of the evidence. We do not agree. Ms. Clark testified that appellant stabbed her on the couch. She later ran to the bathroom while she was bleeding. Blood was later found on the couch and in the bathroom. There is no explanation in the record why there may have been more blood in the bathroom than on the couch. Perhaps Ms. Clark's movements in attempting to defend herself in the bathroom increased her bleeding there. Or perhaps appellant falling on her in the bathtub caused her bleeding to increase. Whatever the reason, the salient fact is that blood was found in both areas, exactly where Ms. Clark testified the stabbing and ensuing struggle occurred. The fact that blood was found in both areas strengthens rather than weakens the state's case.
 {¶ 65} The jury was in the best position to view the witnesses and determine their credibility. The defense presented no witnesses. The jury obviously chose to give great weight to the testimony of the victim and the other state witnesses, and did not conclude that the few minor points made by appellant on cross examination diminished the force *Page 17 
of the state's case. From our review of the evidence, there is nothing to indicate that the testimony given by the state's witnesses lacked fundamental credibility. Therefore, after carefully reviewing the record, including the testimony and exhibits presented at trial, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.
 {¶ 66} Appellant's second assignment of error is without merit.
 {¶ 67} For his third assignment of error, appellant asserts the following:
 {¶ 68} "THE COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT DENIED HIS REQUEST FOR AN ALTERNATE JURY INSTRUCTION."
 {¶ 69} Under his third assignment of error, appellant argues the court erred by denying his request for a jury instruction on the lesser included offense of aggravated assault. We do not agree.
 {¶ 70} In determining whether a trial court erred in failing to give a requested jury instruction, a reviewing court must decide if the instruction was relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder. State v.Cornwell, 86 Ohio St.3d 560, 567, 1999-Ohio-125. A jury instruction is proper and relevant if: (1) the instruction is relevant to the facts of the case; (2) the instruction gives a correct statement of the relevant law; and (3) the instruction is not covered in the general charge to the jury. Mentor v. Hamercheck (1996), 112 Ohio App.3d 291, 296.
 {¶ 71} A jury may consider three groups of lesser offenses on which, when supported by the evidence, it must be charged: (1) attempts to commit the crime charged; (2) inferior degrees of the indicted offense; or (3) lesser included offenses. *Page 18 State v. Deem (1988), 40 Ohio St.3d 205, paragraph one of the syllabus. If the jury could reasonably find against the state and for the defendant on one or more of the elements of the crime charged and for the state and against the defendant on the remaining elements, which by themselves would sustain a conviction of a lesser included offense, then a charge on the lesser included offense is required. State v.Nolton (1969), 19 Ohio St.2d 133, 135.
 {¶ 72} An offense is an inferior degree of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements. Deem, supra, paragraph two of the syllabus. Aggravated assault is an inferior degree of the indicted offense, felonious assault. Deem, supra, paragraph four of the syllabus. This is so because the elements of aggravated assault are identical to or contained in those of felonious assault, except that aggravated assault includes a mitigating element of serious provocation. Thus, in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury. Id.
 {¶ 73} The mitigating factor under aggravated assault is that the person is "under the influence of sudden passion or in a sudden fit of rate, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force. R.C. 2903.12(A). The Supreme Court has defined "serious provocation" as follows:
 {¶ 74} "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was *Page 19 
reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time."Deem, supra, paragraph five of the syllabus.
 {¶ 75} Further, past incitement or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off. State v. Mack, 82 Ohio St.3d 198, 201, 1998-Ohio-375.
 {¶ 76} This court in State v. Cayson, 11th Dist. No. 2004-T-0118,2006-Ohio-2011, addressed the test used to determine the adequacy of evidence of serious provocation, as follows:
 {¶ 77} "The analysis of sufficient evidence of adequate provocation requires a two-part inquiry. First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage.* * *Mack, [supra, at] 201. * * * `In determining whether the provocation was reasonably sufficient * * * the court must consider the emotions and mental state of the defendant and the conditions and circumstances that surround him at the time.' (Citation omitted.) Id. at 200. The provocation must be occasioned by the victim and "must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. [State v.] Shane [(1992), 63 Ohio St.3d 630] at 635. [Emphasis in original.] If the objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case `actually was under the influence of sudden passion or in a sudden fit of rage. * * *' Id. at 634. Thus, the determination of adequate provocation necessarily involves a factual analysis. * * *" Id. at ¶ 18. *Page 20 
 {¶ 78} Appellant argues that two pieces of circumstantial evidence warranted an aggravated assault instruction. First, he argues that Ms. Clark was the only witness to testify that boiling water had been thrown in her apartment, but that "she would not say who threw it." Next, the security video shows that after appellant left Ms. Clark's apartment he wiped something off of himself. Appellant argues that from this "evidence" it is "possible" the jury could have found that appellant was seriously provoked after watching Ms. Clark spill hot water on her child. We do not agree.
 {¶ 79} First, Ms. Clark testified that when she was at her sink with her back to appellant, she felt some hot water hit her leg. She further testified that after she left the apartment and then returned, she found the food she had been cooking was thrown all around the apartment. Ms. Clark did not refuse to say who threw the water at her in the kitchen, as appellant suggests. She was not in a position to see who threw it because her back was to him. In this context, her unwillingness to attribute the thrown hot water to appellant is no evidence she spilled hot water on her child, but rather lends credibility to her testimony.
 {¶ 80} Next, there is no evidence in the record that shows, directly or by inference, that Ms. Clark threw a pot of boiling water at any time. Her testimony that she did not throw any boiling water is uncontradicted in the record.
 {¶ 81} While the video is far from clear, to the extent it can be argued appellant can be seen wiping his jacket after he left Ms. Clark's apartment, we find no relevance to such image. The video is only relevant in that it led police to the knife appellant hid in the window ledge as he left Ms. Clark's apartment. *Page 21 
 {¶ 82} It must be noted that because appellant left the apartment for a time after his first assault on Ms. Clark and then returned some time later, at which time he kicked in her door and stabbed her, appellant's motivation was based on past incitement.
 {¶ 83} The undisputed evidence is that appellant was the aggressor. There is no evidence Ms. Clark provoked him in any way, let alone caused serious provocation. We hold the trial court properly refused to instruct the jury on aggravated assault because there was no evidence of serious provocation.
 {¶ 84} For his fourth, fifth, sixth, seventh, and eighth assignments of error, appellant asserts as follows:
 {¶ 85} "[4] THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM AND CONSECUTIVE PRISON TERMS IN VIOLATION OF THE DUE PROCESS AND EX POST FACTO CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS.
 {¶ 86} "[5,] THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM AND CONSECUTIVE PRISON TERMS IN VIOLATION OF DEFENDANT-APPELLANT'S RIGHT TO DUE PROCESS.
 {¶ 87} "[6.] THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM AND CONSECUTIVE PRISON TERMS BASED ON THE OHIO SUPREME COURT'S SEVERANCE OF THE OFFENDING PROVISIONS UNDER FOSTER, WHICH WAS AN ACT IN VIOLATION OF THE PRINCIPLE OF SEPARATION OF POWERS. *Page 22 
 {¶ 88} "[7.] THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM AND CONSECUTIVE PRISON TERMS CONTRARY TO THE RULE OF LENITY.
 {¶ 89} "[8] THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT-APPELLANT TO MORE-THAN-THE-MINIMUM AND CONSECUTIVE PRISON TERMS CONTRARY TO THE INTENT OF THE OHIO LEGISLATORS."
 {¶ 90} The arguments asserted by appellant in these assignments of error are interrelated and will therefore be considered together. They are identical to those arguments raised and rejected in numerous prior decisions of this court. See State v. Green, 11th Dist. Nos. 2005-A-0069 and 2005-A-0070, 2006-Ohio-6695; State v. Elswick, 11th Dist. No. 2006-L-075, 2006-Ohio-7011, at ¶ 30; State v. Asbury, 11th Dist. No. 2006-L-097, 2007-Ohio-1073, at ¶ 15; State v. Anderson, 11th Dist. No. 2006-L-142, 2007-Ohio-1062, at ¶ 15; State v. Spicuzza, 11th Dist. No. 2006-L-141, 2007-Ohio-783, at ¶ 13-35.
 {¶ 91} These same arguments have also been consistently rejected by other Ohio appellate districts and federal courts. See State v.Gibson, 10th Dist. No. 06AP-509, 2006-Ohio-6899; State v. Moore, 3d Dist. No. 1-06-51, 2006-Ohio-6860, at ¶ 9; United States v.Portillo-Quezada (C.A. 10 2006), 469 F.3d 1345, 1354-1356, and the cases cited therein.
 {¶ 92} Moreover, even if appellant's sentence could be reviewed underFoster, appellant was not per se entitled to the minimum sentence, as he argues. "Foster did not hold that a defendant is entitled to receive the shortest sentence authorized under Ohio law." State v. Lewis, 10th Dist. No. 06AP-327, 2006-Ohio-2752, at ¶ 7. Rather, *Page 23 
"post-Foster, a sentencing court is free to impose any sentence from the statutory range of punishment. The court is not required to impose the shortest authorized sentence." Id.
 {¶ 93} Appellant's fourth, fifth, sixth, seventh, and eighth assignments of error are without merit.
 {¶ 94} For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.
DIANE V. GRENDELL, J., concurs,
 COLLEEN MARY OTOOLE, J., dissents. *Page 1