OPINION
{¶ 1} Appellant, Sophia Feliciano, appeals from a judgment of the Lake County Court of Common Pleas, denying her motion to suppress. For the reasons that follow, we affirm.
 {¶ 2} On March 2, 2004, the Lake County Grand Jury indicted appellant on the following charges: (1) possession of cocaine, a fourth degree felony in violation of R.C. 2925.11; (2) possession of criminal tools, a fifth degree felony in violation of R.C.2923.24; and (3) trafficking of cocaine, a fourth degree felony in violation of R.C. 2923.03(A)(2). Appellant waived the right to appear at her arraignment, and the court entered a plea of not guilty, on her behalf, to the foregoing charges.
 {¶ 3} Appellant moved to suppress any evidence resulting from her arrest. She maintained that the arresting officer did not have probable cause to detain her or seize the cocaine. The trial court held a hearing on appellant's motion to suppress.
 {¶ 4} Patrolmen Michael Slocum ("Ptlm. Slocum"), of the Painesville Police Department, was the sole witness to testify at the hearing. Ptlm. Slocum testified that on January 4, 2004, he was patrolling a high crime area in Painesville, Ohio, which was maintained by the Lake Metro Housing Authority ("LMHA"). At approximately 12:25 p.m., Ptlm. Slocum observed appellant and an unidentified male walking between separate apartment buildings that he believed were under the authority of LMHA. Ptlm. Slocum testified that two days prior to the incident, he became aware that appellant had been issued a no trespass order on LMHA property. As a result, Ptlm. Slocum radioed dispatch to verify the no trespass order.
 {¶ 5} While he awaited verification, Ptlm. Slocum approached appellant and the unidentified male to further investigate the no trespass order. After initiating contact with appellant, Ptlm. Slocum asked her about the no trespass order. Appellant informed Ptlm. Slocum that the no trespass order had been issued, but she was not currently on LMHA property. Ptlm. Slocum testified that appellant appeared very nervous when he first approached her and that she became increasingly angry and belligerent when questioned about the no trespass order.
 {¶ 6} At some point during the conversation, appellant placed her gloved hands into her jacket pockets and balled them into fists. Ptlm. Slocum viewed this action as a possible threat and noticed another area resident approaching appellant and the unidentified male. Accordingly, Ptlm. Slocum requested that appellant remove her hands from her jacket pockets. Appellant refused and became more confrontational with Ptlm. Slocum.
 {¶ 7} Ptlm. Slocum testified that he informed appellant that he was going to place her in handcuffs for safety reasons. He requested that appellant walk to his patrol vehicle. Appellant failed to comply with Ptlm. Slocum's request and turned her back to him. Ptlm. Slocum then placed handcuffs on appellant and, in doing so, noticed that appellant was holding a small container in her hand, which contained a white substance. Upon further examination, Ptlm. Slocum concluded that the substance was cocaine.
 {¶ 8} Ptlm. Slocum then placed appellant under arrest. He testified that the entire confrontation lasted approximately two minutes. As Ptlm. Slocum transported appellant to the police station, it was verified that appellant had been issued a no trespass order on LMHA property. However, it was also discovered that appellant was not on LMHA property at the time of the arrest.
 {¶ 9} At the conclusion of the hearing, the trial court denied appellant's motion to suppress. The court found that Ptlm. Slocum had stated facts and circumstances which rendered his investigative stop and use of handcuffs reasonable.
 {¶ 10} Subsequently, appellant entered a plea of no contest to a single count of possession of cocaine. The trial court found appellant guilty of possession of cocaine and sentenced her to serve fifty days in jail and three years of community control.
 {¶ 11} From this judgment, appellant filed a timely notice of appeal and sets forth the following assignment of error:
 {¶ 12} "The trial court erred to the prejudice of the defendant-appellant when it overruled her motion to suppress challenging the lawfulness of the police search and seizure, in violation of her constitutional rights against unreasonable search and seizure as guaranteed by the Fourth andFourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution."
 {¶ 13} At the outset, we note that appellant's plea of no contest does not act to waive her assigned error on appeal. Unlike a plea of guilty, a plea of no contest does not operate as a waiver of any trial court error concerning the suppression of evidence. State v. Brown, 11th Dist. No. 2001-P-0055, 2001-Ohio-8825, 2001 Ohio App. LEXIS 5862, at 3.
 {¶ 14} We will now set forth the appropriate standard of review. At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v.Mills (1992), 62 Ohio St.3d 357, 366; State v. Smith (1991),61 Ohio St.3d 284, 288.
 {¶ 15} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id. at 592. See, also, State v. Swank (Mar. 22, 2002), 11th Dist. No. 2001-L-054, 2002-Ohio-1337.
 {¶ 16} Appellant first contends that Ptlm. Slocum's initial detention was not based upon a reasonable suspicion which warranted the intrusion. In support of this contention, appellant claims that Ptlm. Slocum relied upon "stale" and inaccurate information as a basis for his investigative stop. Thus, appellant concludes that her constitutional rights against an unreasonable search and seizure were violated.
 {¶ 17} The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons * * * against unreasonable searches and seizures." The "overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." Schmerber v. California (1966), 384 U.S. 757, 767.
 {¶ 18} An individual's rights under the Fourth Amendment cannot be invoked unless the individual has been "seized." Statev. Brown, 11th Dist. No. 2001-L-168, 2002-Ohio-6930, at ¶ 12. A seizure occurs if, in view of all the circumstances surrounding the police contact, a reasonable person would believe he or she was not free to leave. Id.
 {¶ 19} Here, Ptlm. Slocum testified that appellant was not free to leave until the no trespass order had been verified. Thus, Ptlm. Slocum's contact with appellant was considered a seizure under the Fourth Amendment.
 {¶ 20} That being said, the United States Supreme Court has held that a seizure for the purpose of an investigative stop is justified when a police officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v.Ohio (1968), 392 U.S. 1, 21. The propriety of an investigative stop by a police officer must be reviewed in light of the totality of the surrounding circumstances. State v. Bobo
(1988), 37 Ohio St.3d 177, paragraph one of the syllabus. This is an objective rather than subjective inquiry. State v. Robinette
(1997), 80 Ohio St.3d 234, paragraph one of the syllabus.
 {¶ 21} Ptlm. Slocum's detention of appellant was supported by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the intrusion. In the instant case, Ptlm. Slocum testified that he was aware that appellant had been issued a no trespass order for all LMHA properties. He stated that he had become aware of appellant's no trespass order just two days prior to the January 4, 2004 arrest. As a result, Ptlm. Slocum's decision to detain appellant was not based upon "stale" evidence.
 {¶ 22} Moreover, "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be the most reasonable in light of the facts known to the officer at the time." Adams v. Williams (1972), 407 U.S. 143, 145. In short, "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." Id.
 {¶ 23} Ptlm. Slocum testified that he needed to verify the status of the no trespass order, but was concerned that appellant would abscond prior to verification. Accordingly, Ptlm. Slocum detained appellant for a limited time to perform an investigatory stop and verify the no trespass order.
 {¶ 24} In hindsight, Ptlm. Slocum incorrectly determined that appellant was trespassing upon LMHA properties. However, in light of the facts known to Ptlm. Slocum at the time of the seizure, it was reasonable to momentarily detain appellant to obtain more information.
 {¶ 25} Because appellant's brief seizure was justified as an investigatory stop, her constitutional rights were not violated. This portion of appellant's assignment of error is not well-taken.
 {¶ 26} Appellant also argues that Ptlm. Slocum's use of handcuffs was not justified and unreasonable under the circumstances. Specifically, appellant maintains that Ptlm. Slocum's decision to use handcuffs was predicated solely upon the furtive movement of placing her hands in her jacket pockets. Appellant concludes that the use of handcuffs was unjustified and, therefore, the observation and seizure of the crack-cocaine should have been suppressed as "fruits of the poisonous tree."
 {¶ 27} It is well-recognized that during an investigative stop, a police officer is entitled to ensure their own safety by handcuffing the detainee should the situation warrant it. See, e.g., Terry; State v. Shirey, 5th Dist. No. 04 CA 68,2005-Ohio-5952; State v. White, 2nd Dist. No. 18731, 2002-Ohio-262; State v. Whitfield, 7th Dist. No. 99 CA 111, 2000-Ohio-2596; State v. Pickett, (Aug. 3, 2000), 8th Dist. No. 76295, 2000 Ohio App. LEXIS 3484; State v. Boykins (Oct. 29, 1999), 1st Dist. No. C-990101, 1999 Ohio App. LEXIS 5048.
 {¶ 28} To use the officer's safety as a justification for handcuffing, the facts and circumstances must establish an element of risk. State v. Mills, 9th Dist. Nos. 02CA0037-M and 02CA0038-M, 2002-Ohio-7323, at ¶ 11. See, also, White;Whitfield.
 {¶ 29} The facts and circumstances surrounding this incident justify the use of handcuffs as a safety precaution. Ptlm. Slocum testified that he had detained appellant in a high crime area. Ptlm. Slocum also stated that he was outnumbered at the scene and had no backup. Furthermore, he testified that appellant had become increasingly angry and belligerent. Ptlm. Slocum viewed appellant's placement of her gloved hands in her jacket pocket as a warning signal of a possible concealed weapon. This was further exacerbated by appellant's refusal to comply with Ptlm. Slocum's order to remove her hands from her jacket pockets. See, e.g.,State v. Hubbard, 8th Dist. No. 83385, 2004-Ohio-4498, at ¶ 18.
 {¶ 30} Clearly, Ptlm. Slocum's decision to handcuff appellant was not based solely upon her furtive movements. To the contrary, Ptlm. Slocum testified to numerous factors which collectively established that his use of handcuffs was reasonable to ensure his safety. This portion of appellant's assignment of error is also not well-taken.
 {¶ 31} Based upon the foregoing analysis, appellant's sole assignment of error is without merit. We hereby affirm the Lake County Court of Common Pleas' denial of appellant's motion to suppress.
Grendell, J., concurs,
O'Toole, J., dissents with a Dissenting Opinion.