OPINION
{¶ 1} Appellant, Earl McGary ("McGary"), appeals from the November 22, 2006 judgment entry of the Trumbull Court of Common Pleas, which accepted his plea of no contest and sentenced him to a nine month term of incarceration for one count of possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(b). For the following reasons, we affirm.
 {¶ 2} Statement of Facts and Procedural History *Page 2 
 {¶ 3} On May 19, 2005, Detectives Weber and Gambill of the Warren Police Department were patrolling off-duty in their capacity as security guards for the Hampshire House apartment complex. Although technically "off-duty" because they were not being paid by the Warren Police Department while on night patrol for Hampshire House, they were still vested with full authority as police officers and were dispatched calls from the Warren Police Department when incidents occurred in the vicinity of their patrol. This included making routine traffic stops when they observed traffic violations. Thus, they were both authorized and permitted to engage in all of their "normal" policing duties and responsibilities. Although the detectives were driving in an unmarked police vehicle, it was equipped with a siren and flashing lights on the blinkers. Both detectives were wearing hats and vests that identified them as police in bold white letters.
 {¶ 4} The detectives had just pulled away from a routine traffic stop in the vicinity of Hampshire House and were proceeding down Tod Avenue, S.W., when they observed a white Ford Expedition approaching them as it headed westbound on Oak Street until it came to a stop at the intersection of Tod Avenue and Oak Street. The detectives immediately recognized the vehicle from previous traffic stops, as it was notorious for being driven by drivers without licenses. Instead of proceeding forward through the intersection, the vehicle reversed for approximately seventy-five feet. Observing what they thought was a traffic violation and since they recognized the vehicle, the officers decided to follow it. The vehicle proceeded to back into a front yard, where it parked on the grass with the left wheel slightly dangling over the curb. *Page 3 
 {¶ 5} At that point the detectives parked behind the vehicle and activated their lights. As they approached the parked vehicle they identified McGary as the driver, the front passenger as Marcel Honzu ("Honzu"), and the back seat passenger as Antonio Jackson ("Jackson"). The detectives recognized McGary and the two passengers from prior arrests and investigatory stops.
 {¶ 6} The detectives observed McGary reach down toward his right side, toward the floor of the vehicle by the center console, while he simultaneously turned his head in order to watch the detectives approach. Seeing this furtive gesture, the detectives ordered all the occupants of the vehicle to "get their hands up." Initially, McGary failed to comply, but upon the detectives' second request, he raised his hands in the air above him.
 {¶ 7} Detective Weber approached the driver's side of the vehicle and began speaking to McGary. When asked what he was doing parking on the grass, McGary relayed to him that he was backing into a driveway. At some point the detectives had contacted dispatch to run a check on McGary, the two passengers, and the vehicle. Dispatch reported that McGary was driving with a suspended license, and McGary was subsequently arrested. Officer Gallagher, one of the backup officers who had just arrived at the scene, assisted Detective Weber and placed McGary in the back of his cruiser.
 {¶ 8} Detective Weber ("Weber") then asked Jackson, the back seat passenger, to step out the vehicle. He performed a pat-down search and discovered that Jackson had a baggie of marijuana in his pocket. He was subsequently arrested and a pat-down *Page 4 
was then conducted on Honzu, the front seat passenger, who was found to not have any contraband or weapon on his person.
 {¶ 9} After Weber removed Jackson out of the vehicle, Detective Gambill began to check the immediate area where McGary had been seated. By this time, all of the occupants had been brought out of the vehicle. Detective Gambill discovered a plastic baggy, sticking out by the tip, in plain view in the center console of the lower driver's side storage area. When she looked down into the little compartment, she saw that the bag contained crack cocaine.
 {¶ 10} The vehicle's registration turned out to be in the name of a Mr. Cecil Scott, who was not present and who resided in Youngstown. Neither Honzu nor Jackson had valid driver's licenses. Upon further investigation of the vehicle Detective Gambill discovered three open containers of alcohol, two in the front cup holders of the center console, and one in the back cargo area. McGary was issued a citation at the scene for driving under suspension and illegal backing.
 {¶ 11} Subsequently, on March 22, 2006, an indictment and summons was issued against McGary and filed by the prosecutor's office for one count of possession of cocaine, a felony of the fourth degree in violation of R.C. 2925.11(A) and (C)(4)(b). On August 31, 2006, the court accepted McGary's not guilty plea and set bond at the sum of $3,500. A warrant was issued for McGary on August 21, 2006, and was returned showing service on August 28. On August 29, 2006, the amount of bond was increased to the sum of $10,000.
 {¶ 12} McGary posted bond on September 13, 2006, and on the same day filed a motion in limine to exclude Detectives Gambil and Weber from testifying since they *Page 5 
were not dressed in full uniform and were driving an unmarked vehicle. One day later, McGary's appointed counsel from the state public defender's office filed a motion to appoint new counsel due to a conflict of interest. The public defender's office was also representing Jackson, who the defense had issued a subpoena to in McGary's case. The court granted the motion on September 22, 2006, and appointed independent counsel.
 {¶ 13} McGary then filed a motion to suppress on October 3, 2006, alleging that the officers did not have probable cause for the stop, and thus all evidence, namely, the crack cocaine discovered during the stop should be suppressed. The suppression hearing was held on November 17, 2006. The court overruled the motion, finding that although McGary did not ultimately commit a traffic violation, the totality of the circumstances evidenced more than a reasonable suspicion for the investigatory stop.
 {¶ 14} On November 20, 2006, McGary filed a second motion in limine to prohibit the state from introducing or eliciting any evidence on McGary's prior convictions or investigations that the state may have conducted in the past, especially given the detectives prior arrest history with McGary.
 {¶ 15} However, McGary asked to change his plea of not guilty and on November 22, 2006, the court accepted and entered his plea of no contest for one count of possession of cocaine. McGary waived his right to a pre-sentence investigation. Thus, on the same day, he was sentenced to a nine month term of incarceration, and a fine of $5,000, as well as informed of the possibility of postrelease control for a period of up to three years following his term of his incarceration. The court then stayed the sentence pending this appeal. *Page 6 
 {¶ 16} McGary timely appealed on December 21, 2006, and now presents the following assignment of error:
 {¶ 17} "The trial court erred in denying appellant's motion to suppress evidence obtained by the state."
 {¶ 18} In his sole assignment of error, McGary argues that the trial court erred in denying his motion to suppress since there was no reasonable suspicion to initially stop the vehicle. For the following reasons, we affirm the decision of the trial court.
 {¶ 19} Standard of Review
 {¶ 20} "At a hearing on a motion to suppress, the trial court functions as the trier of fact, and, therefore, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses." State v. Molek, 11th Dist. No. 2001-P-0147, 2002-Ohio-7159, ¶ 24, citing State v Mills (1992),62 Ohio St.3d 357, 366; see, also, State v. Mustafa, 11th Dist. No. 2000-P-0116, 2001-Ohio-7067, 3-4. Thus, "[a]n appellate court must accept the findings of fact of the trial court as long as those findings are supported by competent, credible evidence." Id. citing State v.Retherford (1994), 93 Ohio App.3d 586, 592; City of Ravenna v.Nethken, 11th Dist. No. 2001-P-0040, 2002-Ohio-3129, ¶ 13. "After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has met." Id.
 {¶ 21} Investigative Stop
 {¶ 22} "A stop is constitutional if it is supported by either a reasonable suspicion or probable cause." Id. at ¶ 25. "[T]he concept of an investigative stop allows a police officer to stop an individual for a short period if the officer has a reasonable suspicion *Page 7 
that criminal activity has occurred or is about to occur." State v.McDonald (Aug. 27, 1993), 11th Dist. No. 91-T-4640, 1993 Ohio App. LEXIS 4152, 10, citing State v. Klein (1991), 73 Ohio App.3d 486. "In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which would warrant a man of reasonable caution in the belief that the action taken was appropriate." Id. citing Klein at 488; citing Terry v. Ohio (1968), 392 U.S. 1, 19-20.
 {¶ 23} "As to the determination of whether an officer had a reasonable suspicion turns upon the specific facts of the case, the Supreme Court has consistently held that the propriety of such a stop `must be viewed in light of the totality of the surrounding circumstances.'" Id. citingState v. Bobo (1988), 37 Ohio St.3d 177, first paragraph of the syllabus.
 {¶ 24} In this case, the trial court determined that under the totality of the circumstances reasonable suspicion existed for the detectives to investigate McGary's stopped vehicle. The court found that since the detectives believed a traffic violation, that of improper backing, had occurred and since the incident occurred well into the late hours of the evening at approximately 11:41 p.m. in a high crime and drug area, together with the unusual fact that both detectives were familiar with McGary, the passengers and the vehicle combined with McGary's furtive movements constituted more than enough reasonable suspicion to warrant the investigatory stop that followed. We agree.
 {¶ 25} The Ohio Supreme Court in State v. Bobo, emphasized the following in reversing the Eight District Court of Appeals finding that there were no articulable facts to justify the officers' reasonable suspicion that the appellant was engaged in criminal *Page 8 
activity. Rather, the Supreme Court held that enough reasonable suspicion existed to warrant an investigatory stop of the parked vehicle since: "(1) the stop was made at 11:20 p.m.; (2) the lead officer in the stop was a twenty-year veteran who had made may [sic] arrests for drugs; (3) the officers were familiar with the area and how drug transactions were made; and (4) just prior to the stop, the officer saw the defendant popping up in his seat and then ducking and leaning forward."McDonald at 11, citing Bobo at 7-8.
 {¶ 26} In the case sub judice, we are presented with almost these identical factors, in addition to the detectives' familiarity with McGary, the passengers, and the vehicle. Further, although the improper backing was not in violation of Warren Ordinance 331.13, which is identical to R.C. 4511.38, both detectives testified that they believed McGary was in violation of the ordinance since he backed up his vehicle approximately seventy-five feet before parking on someone's front lawn.
 {¶ 27} McGary cites State v. Thompson (Dec. 30, 1998), 12th Dist. No. CA98-05-056, 1998 Ohio App. LEXIS 6309, as support for his argument that his seventy-five feet reversal down Oak Lane was not enough to arise to the level of reasonable suspicion under the circumstances. However, in that case, as both the trial court and the state noted, the court found that although they had previously ruled that a improper backing in violation of R.C. 4511.38 only applies when backing up on a freeway, the court held that in Thompson, the facts were distinguishable since "[l]ess than probable cause, however, is needed for an investigative stop which is the issue in this case. The fact that appellant may or may not have been guilty of improper backing does not, as a matter of law, adversely affect the determination of whether the trooper possessed a legally *Page 9 
sufficient basis to initiate the stop." Id. at 6. See Michigan v.Defillippo (1979), 443 U.S. 31. (Citation omitted.) Indeed, the court ultimately found that reasonable suspicion existed for the two hundred feet reversal alone and found "that the trial court could properly determine that the combination of night conditions and the considerable distance covered, approximately two hundred feet, provided the trooper with reasonable suspicion of erratic driving or improper backing warranting an investigative stop." Id. at 7. See State v.Denton-Boyer (May 26, 1998), 12th Dist. No. CA97-11-096, 1998 Ohio App. LEXIS 2273. Thus, there were less circumstances present inThompson than the case at bar.
 {¶ 28} Further, in coming to that conclusion, the Thompson court relied on this court's decision in State v. Marshall (Apr. 25, 1997), 11th Dist. No. 96-A-0054, 1997 Ohio App. LEXIS 1680, where we similarly remarked that "[t]wo hundred feet constitutes a much longer distance than what would typically be required to back a vehicle into a residential driveway or a parking space. Notably, appellant started backing up at the stop sign and moved all the way back to the driveway. Even though appellant was traveling slowly, he, nevertheless, represented a potential traffic hazard to any vehicles traveling northbound." Id. at 6.
 {¶ 29} In State v. Santmire, 10th Dist. No. 02AP-517, 2002-Ohio-6758, the Tenth Appellate District Court relied on Thompson, in finding that the backing of a vehicle for the distance of one or two car lengths, without any other circumstances present, did not provide justification that amounted to reasonable suspicion for the subsequent investigatory stop. The court found that since the appellant only backed his vehicle twenty to thirty feet and since there was no evidence that he was driving erratically or *Page 10 
that there were other vehicles in the area, and further, that he executed the move safely; the facts simply did not support a reasonable suspicion that the appellant was violating any traffic law. Id. at ¶ 9-12.
 {¶ 30} In the case of McGary, we are confronted with a situation where the improper backing was more than the twenty to thirty feet of an "ordinary" backing, but yet is shorter than two hundred feet, which we found to be a violation of improper backing in Marshall. Nevertheless, it was not the improper backing that alone provided reasonable suspicion in this case. It is the combined factors of improper backing, both detectives' familiarity with the vehicle, McGary, and the other occupants, in addition to the late hour in a high-crime area, with two detectives who specialize in narcotics, combined with McGary's furtive movements that together gave rise to a reasonable suspicion that warranted a further investigatory stop.
 {¶ 31} Thus, we determine that under the totality of the circumstances in this case, a reasonable suspicion existed for the detectives to stop and question McGary. We find that the trial court did not err in denying McGary's motion to suppress, since we find that the detectives validly stopped the vehicle.
 {¶ 32} "Once a law enforcement officer has validly stopped a vehicle, he may detain the occupants for a period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates and to issue the driver a warning or citation. Molek at ¶ 32, citingState v. Warner (July 6, 1998), 4th Dist. No. 97-CA-943, 1998 Ohio App. LEXIS 3337, at 5. "The scope and duration of a routine traffic stop `must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop.'" Id. citing Florida v. Royer (1983), *Page 11 460 U.S. 491, 500. Thus, the discoveries that flowed from the stop, that of McGary driving under a suspended license and the crack cocaine, cannot be said to be "fruits of a poisonous tree."
 {¶ 33} McGary's assignment of error is without merit.
 {¶ 34} The judgment of the Trumbull Court of Common Pleas is affirmed.
 CYNTHIA WESTCOTT RICE, P.J., TIMOTHY P. CANNON, J., concur. *Page 1