OPINION
{¶ 1} Appellant, Joseph P. Stack, appeals from the November 5, 2007 judgment entry of the Ashtabula Court of Common Pleas, which sentenced him to two years of community control after finding him guilty of one count of trafficking in drugs. For the following reasons, we affirm.
 {¶ 2} Substantive and Procedural History *Page 2 
 {¶ 3} Appellant ("Mr. Stack") was charged with one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2), a felony of the fourth degree. The charge against Mr. Stack stems from an incident that occurred on January 13, 2007, at approximately 2:40 a.m. in the morning. Deputy Brian Cumberledge ("Deputy Cumberledge"), a detective with the Ashtabula County sheriffs department, was on the midnight shift at the time. He was patrolling for speeders and impaired drivers in the area of Pymatuning State Park, an area that is known for impaired drivers due to its proximity to several nightclubs and bars.
 {¶ 4} Detective Cumberledge was following the vehicle behind Mr. Stack's, looking for signs of impairment. Finding none, he turned his attention to Mr. Stack's vehicle. He observed Mr. Stack drive left of center on several occasions. However, it did not appear that Mr. Stack was driving erratically. Rather, it appeared that he was avoiding puddles of standing water due to the continuous rain. After following him for a couple hundred yards, Mr. Stack made a sudden turn into a private drive and parked in a driveway. Detective Cumberledge followed him and upon seeing Mr. Stack park and exit the vehicle, he drove past and turned around in the next driveway. However, as he pulled out of the driveway, he saw that Mr. Stack was still standing outside on the uncovered porch of the darkened home, in the rain. From this suspicious behavior, he determined that Mr. Stack did not live at the residence and decided to pull into the driveway to investigate further.
 {¶ 5} As Detective Cumberledge drew closer, he observed Mr. Stack speaking to a female through the glass door. He approached Mr. Stack on the porch and inquired as to what he was doing there. Mr. Stack responded that he was checking with a friend *Page 3 
to see if he could stay the night because he was tired from driving. This raised suspicions in Detective Cumberledge's mind because Mr. Stack also told him that he lived nearby. He did not, however, have any suspicions that Mr. Stack was impaired or under the influence of alcohol and/or drugs.
 {¶ 6} After inquiring further, Detective Cumberledge learned that Mr. Stack did not have his driver's license with him. He asked Mr. Stack to accompany him to the police car so that he could run Mr. Stack's information through dispatch and confirm that he had a valid driver's license. Mr. Stack voluntarily complied. Detective Cumberledge conducted a pat-down of Mr. Stack for safety purposes before asking him to sit in the patrol car while his information was retrieved, which is when cocaine was found on Mr. Stack's person.
 {¶ 7} Subsequently, Mr. Stack was arrested and charged. A hearing was held on Mr. Stack's motion to suppress on July 25, 2007. The court overruled Mr. Stack's motion to suppress, finding that the fact that Deputy Cumberledge pulled in behind Mr. Stack's vehicle in the driveway did not constitute a traffic stop or an arrest, nor did it infringe on Mr. Stack's liberty. Rather, the court found that Deputy Cumberledge's observations of Mr. Stack standing outside a darkened house at 2:40 a.m. in the rain would raise a reasonable suspicion sufficient to justify further limited investigation. The court also found it was reasonable to request Mr. Stack's identification, and upon his failure to produce identification, the court further found that it was reasonable for Deputy Cumberledge to ask Mr. Stack to follow him to the patrol vehicle in order to contact dispatch. Thus, the court found that Mr. Stack was not detained. *Page 4 
 {¶ 8} On August 3, 2007, Mr. Stack withdrew his not guilty plea and entered a plea of guilty to trafficking in drugs, in violation of R.C. 2925.03. The judge accepted the plea and deferred the matter for a presentence investigation. At the sentencing hearing on November 2, 2007, the court sentenced Mr. Stack to two years of community control, ordered him to obtain a drug and alcohol evaluation and to submit to testing as determined by his probation officer. In addition, the court suspended Mr. Stack's driver's license for six months and ordered him to pay a fine of $200, plus court costs.
 {¶ 9} Mr. Stack now timely appeals and raises one assignment of error:
 {¶ 10} "The trial court erred when it overruled Appellant's motion to suppress."
 {¶ 11} Standard of Review
 {¶ 12} "At a hearing on a motion to suppress, the trial court functions as the trier of fact, and, therefore, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses." State v. McGary, 11th Dist. No. 2006-T-0127, 2007-Ohio-4766, ¶ 20, quoting State v. Molek, 11th Dist. No. 2001-P-0147, 2002-Ohio-7159, ¶ 24, citing State v. Mills (1992),62 Ohio St.3d 357, 366; see, also, State v. Mustafa, 11th Dist. No. 2000-P-0116, 2001 Ohio 7067, 3-4. "Thus, `[a]n appellate court must accept the findings of fact of the trial court as long as those findings are supported by competent, credible evidence." Id., citingMolek at ¶ 24, citing State v. Retherford (1994), 93 Ohio App.3d 586,592; City of Ravenna v. Nethken, 11th Dist. No. 2001-P-0040, 2002-Ohio-3129, ¶ 13. "After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met." Id.
 {¶ 13} Investigatory Stop *Page 5 
 {¶ 14} In his sole assignment of error, Mr. Stack asserts that the trial court erred in overruling his motion to suppress. Specifically, Mr. Stack contends that he was subjected to a "seizure" rather than an investigatory stop, and that even if the investigatory stop was proper, there was no reasonable and articulable suspicion to initiate the stop.
 {¶ 15} "A stop is constitutional if it is supported by either a reasonable suspicion or probable cause." McGary at ¶ 22, citingMolek at ¶ 15. "[T]he concept of an investigative stop allows a police officer to stop an individual for a short period if the officer has a reasonable suspicion that criminal activity has occurred or is about to occur." Id., citing State v. McDonald (Aug. 27, 1993), 11th Dist. No. 91-T-4640, 1993 Ohio App. LEXIS 4152, 10, citing State v. Klein (1991),73 Ohio App. 3d 486. "In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which would warrant a man of reasonable caution in the belief that the action taken was appropriate." Id., citing McDonald at 10, citingKlein at 488, citing Terry v. Ohio (1968), 392 U.S. 1, 19-20.
 {¶ 16} "As to the determination of whether an officer had a reasonable suspicion turns upon the specific facts of the case, the Supreme Court has consistently held that the propriety of such a stop `must be viewed in light of the totality of the circumstances.'" Id. at ¶ 23, citingMcDonald at 10, citing State v. Bobo (1988), 37 Ohio St.3d 177, first paragraph of the syllabus.
 {¶ 17} While the facts of the instant case give us pause, upon further consideration, when viewed under the totality of the circumstances, we cannot say that *Page 6 
Detective Cumberledge acted improperly and without a reasonable suspicion to warrant the brief investigatory stop that occurred.
 {¶ 18} Initially, we note that when Detective Cumberledge first began to follow Mr. Stack, he did not have a reasonable suspicion as Mr. Stack showed no signs of impairment or intoxication. Detective Cumberledge himself testified that although he observed Mr. Stack swerve several times, he believed it was not due to impairment, but rather, was indicative of a cautious driver avoiding the puddles of rain that had accumulated throughout the night.
 {¶ 19} When Mr. Stack abruptly turned, however, albeit while properly using his turn signal, into a private drive, he became suspicious and decided to follow the vehicle further. Detective Cumberledge testified that it was common practice for individuals who are engaged in some nefarious activity or driving under the influence to turn abruptly to evade a police officer who is driving behind them.
 {¶ 20} Thus, he continued to follow Mr. Stack down the private drive until he observed Mr. Stack pull into a driveway. Upon seeing Mr. Stack pull into the driveway, his initial suspicions were dispelled, and Detective Cumberledge drove past the driveway in order to turn around. He proceeded to turn his patrol vehicle around in the next driveway when he noticed that Mr. Stack was still standing in the rain on the uncovered front porch of the darkened residence. It is this behavior, combined with the sudden turn into the private drive, and the late hour of night, when viewed under the totality of the circumstances, that gave rise to a reasonable suspicion that warranted an investigatory stop. *Page 7 
 {¶ 21} As Detective Cumberledge stated, it was common practice for vehicles to make sudden turns in order to evade police vehicles. In his experience, these individuals were either driving impaired or engaged in some nefarious activity. Thus, we cannot say that Detective Cumberledge erred by investigating an individual who had made a sudden turn, parked in a private drive, and then stood in the rain of the uncovered porch in the dark.
 {¶ 22} "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be the most reasonable in light of the facts known to the officer at the time." State v. Feliciano, 11th Dist. No. 2004-L-205, 2006-Ohio-1678, ¶ 22, citing Adams v. Williams (1972),407 U.S. 143, 145. "In short, the `Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.'" Id.
 {¶ 23} Although the fact that Detective Cumberledge parked directly behind Mr. Stack's vehicle is troubling, this fact alone does not lead to the conclusion that Mr. Stack was unreasonably "seized." This is especially so because in the instant case, Deputy Cumberledge was not blocking Mr. Stark from exiting. Rather, Mr. Stack's vehicle was parked. The confrontation between Detective Cumberledge and Mr. Stack occurred outside on the premises of the porch. Detective Cumberledge testified that it was the only place to park. Further, he did not activate the strobe lights of the police vehicle. His very actions indicate he was simply investigating whether Mr. Stack had an innocent reason to approach this house in the dark of night and remain standing outside an unlit home in the rain. *Page 8 
 {¶ 24} Thus, we find that under the totality of the circumstances, Detective Cumberledge was warranted in initiating an investigatory stop.
 {¶ 25} Mr. Stack's assignment of error is without merit.
 {¶ 26} The judgment of the Ashtabula County Court of Common Pleas is affirmed.
 DIANE V. GRENDELL, P.J., concurs, COLLEEN MARY OTOOLE, J., dissents. *Page 1