OPINION
{¶ 1} Appellant, Charles W. Davis, appeals from his conviction by jury and sentence for one count of operating a motor vehicle under the influence of alcohol, which was enhanced to a felony of the fourth degree by his three prior OVI convictions in the past six years. For the following reasons, we affirm. *Page 2 
 {¶ 2} Substantive and Procedural History
 {¶ 3} On the night of March 30, 2007, at approximately 9:23 p.m., Mr. Davis made an emergency call to 911 reporting that he had been in an accident at the Wright Place, a local tavern in Willoughby Hills. He reported that the driver had eluded him although he had tried to pursue him in his 1987 black Mercedes.
 {¶ 4} Unbeknownst to Mr. Davis, while he was spinning this tale, the Willoughby Hills Police were already on the scene at the Wright Place, having been called to the scene after an eyewitnesses alerted them of a "hit-skip" accident, in which a black Mercedes ran into a parked Lexus, which, in turn, was forced into a Toyota Rav4, shattering its back window and bending the door frame, ultimately causing more than $3,800 in damage to the two vehicles. The black Mercedes sped away from the Wright Place lot turning left onto I-90, leaving a trail of leaking radiator fluid in its wake.
 {¶ 5} Eyewitness, Leslie Wiedenkopf, alerted the owner of the Wright Place of the accident and asked the owner to call the police. She later identified Mr. Davis as the driver of the Mercedes. Moments before the accident she had witnessed a loud verbal exchange between Mr. Davis and Erica Wilson, his former girlfriend and bartender at the Wright Place. Ms. Wiedenkopf stayed outside because she feared for Ms. Wilson's safety after hearing Mr. Davis yell at Ms. Wilson using vulgar and threatening language. She then observed Mr. Davis stalk into his black Mercedes and peel off crazily, driving at a high rate of speed in the crowded parking lot. *Page 3 
 {¶ 6} Patrolman Craig Anderson of the Willoughby Hills Police Department left the Wright Place to respond to Mr. Davis' call and found Mr. Davis standing in his driveway by his damaged vehicle. The black Mercedes, which was leaking radiator fluid, had sustained collision damage on the front passenger's side of the vehicle and the bumper was dangling askew from the front driver's side.
 {¶ 7} Mr. Davis denied drinking any alcohol that night, and appeared very angry, acting in a belligerent and threatening manner. His eyes were bloodshot, his speech was slurred, and the odor of alcohol emanated from his person. At that point, Ptlm. Anderson asked Mr. Davis to submit to some field-sobriety tests, questioning his story and his state of intoxication. After finding two out of four clues on the one-leg stand test, and six out of a possible six clues on the horizontal gaze nystagmus test, Ptlm. Anderson arrested Mr. Davis for driving while intoxicated and fleeing the scene of an accident.
 {¶ 8} On the way to the station Ptlm. Anderson stopped at the Wright Place. Eyewitnesses identified Mr. Davis as the driver of the "hit-skip" vehicle even though he refused to look at them, instead turning his head from the window and raising his middle finger from the back of the cruiser during the witness identification process.
 {¶ 9} At the station, Mr. Davis was mirandized, given an opportunity to call his counsel, and then asked to submit to a BAC test. He refused to sign the BMV-2255 BAC form, and obstinately refused to follow Ptlm. Kratochvil's instructions, who administered the test. Mr. Davis would not blow directly into the mouthpiece, choosing rather, to blow "around it." Ptlm. Kratochvil had to keep telling Mr. Davis that he could feel his breath when he blew and that he needed Mr. Davis to blow into the mouthpiece *Page 4 
correctly. Ptlm. Kratochvil also kept informing Mr. Davis that an incorrect blow is considered a "refusal," and thus, he really should comply. Despite his urgings, however, Mr. Davis continued to play around, having coughing fits, and making exaggerated gestures of compliance. Because Mr. Davis did not cooperate by the time to take the test expired, the digital readout from the BAC machine read "subject refused."
 {¶ 10} Mr. Davis was subsequently indicted on two counts of operating a vehicle under the influence of alcohol, both with DUI specifications and fourth degree felonies in violation of R.C. 4511.19(A)(1)(a), and R.C. 4511.92(A)(2), respectively.
 {¶ 11} Soon after, Mr. Davis filed a motion to dismiss/suppress, arguing that the totality of the circumstances did not indicate the police had sufficient probable cause to arrest because they never saw him operating the vehicle intoxicated. Mr. Davis filed a second motion to dismiss, arguing that the charge, as indicted, was insufficient to warrant a felony prosecution because his 2001 no contest plea to an OVI in Lyndhurst Municipal Court Case No. 01 TRC 04659, was uncounseled, and did not contain a sufficient waiver of his right to counsel, and therefore could not be used against him in the present case. Thus, Mr. Davis argued he should only be charged with a first degree misdemeanor.
 {¶ 12} After a hearing, the court denied both motions, finding that Mr. Davis had failed to make a prima facie showing that his previous conviction was uncounseled as his former counsel in that case, Mark Gardner, testified to the contrary, and further, the case file and supporting documents, as verified by the clerk of courts, showed he had counsel in that case. The court also dismissed Mr. Davis' second motion to *Page 5 
dismiss/suppress, finding that there was sufficient probable cause to arrest him for intoxication at the time he operated his motor vehicle.
 {¶ 13} After a jury trial Mr. Davis was found guilty of one count of OVI, a felony of the fourth degree in violation of R.C. 45119(A)(1)(a). After a presentence investigation, Mr. Davis was sentenced to a two-year term of imprisonment, to be served consecutively to a sentence Mr. Davis was serving for an unrelated case in the Cuyahoga County Court of Common Pleas. He was further ordered to take part in an alcohol and drug addiction program while incarcerated, ordered to pay a fine of $1,000, forfeit the Mercedes vehicle, and have his driver's license revoked for eight years.
 {¶ 14} Mr. Davis timely appealed, and now raises the following four assignments of error:
 {¶ 15} "[1.] The trial court erred when it overruled the defendant-appellant's motion to dismiss the indictment where the seriousness of the crime was increased due to a previous uncounseled conviction, in violation of the defendant-appellant's due process rights and rights to counsel as guaranteed by the Sixth andFourteenth Amendments of the United States Constitution and Article I, Section 10
of the Ohio Constitution.
 {¶ 16} "[2.] The trial court erred when it overruled the defendant-appellant's motion to dismiss and/or suppress the indictment where the police had no probable cause to make an arrest for OVI, in violation of the defendant-appellant's right to be free from unreasonable search and seizure as guaranteed by the Fourth, Fifth, andFourteenth Amendments of the United States Constitution and Article I, Sections 10 and 14 of the Ohio Constitution. *Page 6 
 {¶ 17} "[3.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim. R. 29(A).
 {¶ 18} "[4.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 19} Motion to Dismiss for Uncounseled Convictions
 {¶ 20} Mr. Davis argues in his first assignment of error that the trial court erred in overruling his motion to dismiss the portion of the indictment where the seriousness of the crime was increased. Specifically, Mr. Davis argues that his past OVI conviction from Lyndhurst Municipal Case No. 01 TRC 04659 was uncounseled, and could not be used to heighten the degree of the OVI. Thus, he argues the enhancement would be a violation of his due process rights and rights to counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution. We determine this argument is wholly without merit because there is more than enough evidence that established Mr. Davis was represented by counsel in that case.
 {¶ 21} Standard of Review for Motion to Dismiss the Indictment
 {¶ 22} The Supreme Court of Ohio has explained that "any motion, however labeled, which, if granted, restricts the state in the presentation of certain evidence and, thereby, renders the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed, is, in effect, a motion to suppress. The granting of such order is a final order and may be appealed pursuant to R.C. 2945.67 and Crim. R. 12(J)."State v. Putich, 8th Dist. *Page 7 
No. 89005, 2008-Ohio-681, ¶ 13, citing State v. Davidson (1985),17 Ohio St.3d 132, syllabus; see, also, State v. Sparta Energy Corp. (1998),48 Ohio App.3d 129, 4-5.
 {¶ 23} "At a hearing on a motion to suppress, the trial court functions as the trier of fact and, therefore is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses." State v. Maloney, 11th Dist. No. 2007-G-2788, 2008-Ohio-1492, ¶ 19, citing State v. McGary, 11th Dist. No. 2006-T-0127, 2007-Ohio-4766, ¶ 20, citing State v. Molek, 11th Dist. No. 2001-P-0147, 2002-Ohio-7159, ¶ 24, citing State v. Mills (1992),62 Ohio St.3d 357, 366; see, also, State v. Mustafa (Dec. 14, 2001), 11th Dist. No. 2000-P-0116, 2001 Ohio App. LEXIS 5661, 3-4. "Thus, `[a]n appellate court must accept the findings of fact of the trial court as long as those findings are supported by competent, credible evidence.'" Id., citing McGary at ¶ 20, citing State v. Retherford (1994),93 Ohio App.3d 586, 592; City of Ravenna v. Nethken, 11th Dist. No. 2001-P-0040, 2002-Ohio-3129, ¶ 13. "After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met." Id.
 {¶ 24} Uncounseled Convictions
 {¶ 25} "In State v. Brooke, [113 Ohio St.3d 199, 2007-Ohio-1533,] the Supreme Court of Ohio set forth the following rule of law regarding uncounseled convictions: `Generally, a past conviction cannot be attacked in a subsequent case. However, there is a limited right to collaterally attack a conviction when the state proposes to use the past conviction to enhance the penalty of a later criminal offense. A conviction obtained against a defendant who is without counsel, or its corollary, an uncounseled conviction obtained without a valid waiver of the right to counsel, has been recognized as *Page 8 
constitutionally infirm. State v. Brandon (1989), 45 Ohio St.3d 85, 86;Nichols v. United States (1994), 511 U.S. 738.'" State v.Vacchelli, 11th Dist. No. 2007-A-0078, 2008-Ohio-1780, ¶ 12, citingBrooke at ¶ 9.
 {¶ 26} Thus, "[a]n uncounseled misdemeanor conviction cannot be used to enhance a sentence in a later conviction. Brandon at 87. An uncounseled conviction is one where the defendant was not represented by counsel nor made a knowing and intelligent waiver of counsel." Id. at ¶ 13, quoting State v. Neely, 11th Dist. No. 2007-L-054, 2007-Ohio-6243, ¶ 13, citing State v. Carrion (1992), 84 Ohio App.3d 27, 31.
 {¶ 27} "When a defendant contests the use of a prior conviction on the ground that he or she has entered an uncounseled plea in the prior case, the burden is on the defendant to introduce evidence to make a prima-facie showing of constitutional infirmity. Neely at ¶ 14. Thus, `[w]here questions arise concerning a prior conviction, a reviewing court must presume all underlying proceedings were conducted in accordance with the rules of law and a defendant must introduce evidence to the contrary in order to establish a prima-facie showing of constitutional infirmity.' Brooke at ¶ 11. Once the prima-facie case is made, then the burden shifts to the state to prove that the right to counsel was properly waived. Id. To do so, the state must show there was a knowing, voluntary, and intelligent waiver of the right to counsel under the Sixth Amendment. Brooke at ¶ 25." Id. at ¶ 14.
 {¶ 28} Waiver of Counsel for Misdemeanor Offenses
 {¶ 29} "In determining whether the right to counsel was properly waived in a prior case, a distinction is made between `serious offenses' and `petty offenses.' Neely at ¶ 20. Crim. R. 2 (C) defines a `serious offense' as `any felony, and any misdemeanor for *Page 9 
which the penalty prescribed by law includes confinement for more than six months.' Crim. R. 2(D) defines a `petty offense' as `a misdemeanor other than a serious offense." Id. at ¶ 16.
 {¶ 30} Mr. Davis submits that his second OVI conviction was uncounseled. This conviction was pursuant to Mayfield Hts. Ord. 333.01(A)(1), a first degree misdemeanor, which has a maximum term of imprisonment of no more than six months, and is therefore considered a petty offense. R.C. 2929.24(A)(1).
 {¶ 31} "Crim. R. 11(E) sets forth the requirements for accepting a plea in cases involving petty offenses. It provides:
 {¶ 32} "(E) In misdemeanor cases involving petty offenses, the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea, no contest, and not guilty.
 {¶ 33} "The counsel provisions of Crim. R. 44(B) and (C) apply to division (E) of this rule.
 {¶ 34} "Crim. R. 44(B) and (C) provide as follows:
 {¶ 35} "(B) Counsel in petty offenses
 {¶ 36} "Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel.
 {¶ 37} "(C) Waiver of counsel *Page 10 
 {¶ 38} "Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing.
 {¶ 39} "Crim. R. 22 states that `in petty offense cases all waivers required by Rule 44(B) shall be recorded.' Thus, according to these rules, `[w]aiver of counsel must be made on the record in open court, and in cases involving serious offenses where the penalty includes confinement for more than six months, the waiver must also be in writing and filed with the court.' Brooke at paragraph two of the syllabus."Vacchelli at ¶ 18-26.
 {¶ 40} Was Mr. Davis' Prior Conviction Uncounseled?
 {¶ 41} While at first blush the answer to this question should be easily found, such is not the case before us. Mr. Davis submitted an affidavit in support of his motion to dismiss the indictment, in which he averred he pled no contest on August 16, 2001, that he was unrepresented at the time, and that this resulted in a seven-day confinement. The state conceded at oral argument that the affidavit was sufficient to establish a prima facie case, and accordingly, the burden shifted to the state to prove Mr. Davis' previous conviction was properly counseled.
 {¶ 42} We note that the record in this case is indeed troublesome as the Lyndhurst Municipal Court employs the same form entry at both the arraignment and sentencing, and this entry was improperly docketed in regard to Mr. Davis' change of plea and sentence; however, during the hearing on the motion to dismiss, the state presented very strong circumstantial evidence that Mr. Davis was represented at the critical junction in the municipal court. This documentary evidence was verified by the *Page 11 
clerk of courts who authenticated the documents and testified as to the custom and practice of the Lyndhurst Municipal Court judge. Thus, Mr. Davis' argument that there was no valid waiver of his right to counsel when he pled no contest is wholly without merit since waiver cannot be at issue when one is represented.
 {¶ 43} As noted, it is the practice of the Lyndhurst Municipal Court to journalize both a defendant's arraignment and conviction with the same judgment entry form. The Clerk of Courts, Ms. Kristina Furcsik, authenticated the arraignment/sentencing judgment entry used in Mr. Davis' case. She then testified that it was the custom and practice of the trial judge to write her sentencing entries in the same lavender color ink for the sole purpose of being able to distinguish the two events on the same entry. While in our opinion using one form entry for both the arraignment and the sentence is not the best procedure, it is the established custom and practice of that court.
 {¶ 44} The entry documents reflect that at the time of arraignment Mr. Davis was uncounseled and entered a not guilty plea. At the time of his change of plea and sentence several months later, however, the entry was amended in the sentencing ink color to reflect that Mr. Davis was represented. Specifically, the trial court judge wrote in lavender ink "amended, represented by Mark Gardner."
 {¶ 45} One troubling fact pertaining to the arraignment/sentencing entry is that although the entry is properly signed and dated by the trial court both at the arraignment and the sentencing using the respective colors and included in the court's records, the sentencing portion was not fully docketed. In relevant part, the docket records reflect that Mr. Davis pled not guilty on April 16, 2001, that a plea of not guilty was entered on May 11, 2001, and that his counsel's request for discovery was filed June 19, 2001. *Page 12 
The docket entry for his change of plea hearing on August 16, 2001, does not reflect that a no contest plea was entered. The docket shows only that Mr. Davis paid his fine of $700, and that this was his second DUI in six years. The next docket entry made on August 17, 2001, reflects that that Mr. Davis' commitment papers were issued to the Mayfield Heights City Jail for him to serve his seven day sentence beginning August 22, 2001 and ending August 27, 2001. Thus, missing from the docket is an entry reflecting the filing of the arraignment/sentencing entry as to Mr. Davis' change of plea, the court's finding of guilt, and consequent sentence.
 {¶ 46} We recognize that a court speaks through its journal entries, and that accordingly, the judgment entries must be properly time-stamped, filed, and docketed. In this unusual case, however, the journal entry itself was properly dated by the judge both at the time of arraignment and sentencing. It was not, however, date-stamped after either event, and the events from the change of plea and sentencing hearing were not fully docketed. But these procedural flaws are not fatal to the state's case because the issue before us is not whether there was knowing and intelligent waiver of counsel but rather, whether Mr. Davis was represented by counsel at the time the plea was changed and the sentence imposed. Imperfect journalization of the sentencing entry in this case does not negatively affect the evidentiary value of that entry to establish the fact that Attorney Gardner stood with Mr. Davis.
 {¶ 47} In addition to the court records, the state offered Mr. Gardner's testimony that he represented Mr. Davis in that case. Although he did not specifically recall being in court with Mr. Davis seven years ago, he did have his planner from that year, which scheduled Mr. Davis at 1:00 p.m. for "COP," his shorthand for a change of plea hearing. *Page 13 
His former law partner, Mr. Timothy Kucharski, who retained the firm's records, located the file, which was captioned, "Charles Davis," and corresponded with the Lyndhurst Municipal Court Case No. 01 TRC 04659. The file also contained a dated, faxed discovery request form, signed by Mr. Gardener, with an attached facsimile confirmation that the request was received, as was also reflected on the docket. Finally, the municipal court judge documented Mr. Gardner's presence at the change of plea hearing on the arraignment/sentencing judgment entry in lavender ink.
 {¶ 48} Chiominto Distinguished
 {¶ 49} Thus, this case is unlike State v. Chiominto, 11th Dist. No. 2007-L-138, 2008-Ohio-3393. The issue in that case was whether there was a knowing and intelligent waiver. We reversed, determining that the state failed to meet its burden since the only evidence submitted was a signed waiver form, which was neither time-stamped or filed, coupled with the Lyndhurst Municipal Court judge's affidavit that averred the appellant had appeared before her for a change of plea hearing more than three years before the common pleas court proceeding.
 {¶ 50} The failure to properly time stamp and file the signed waiver was fatal the state's case in Chiominto for two reasons: one, the charge in that case was a serious offense, thus the waiver had to be in writing, and two, the Supreme Court of Ohio declared in State v.Brooke that the waiver must also be "filed with the court." Id. at paragraph two of the syllabus. Inasmuch as waiver of counsel is not in issue here, the Chiominto reasoning does not apply to the facts before us now. *Page 14 
 {¶ 51} With the introduction of the municipal court's documents and the testimony of the two attorneys, the state met its burden and established that Mr. Davis' prior conviction was counseled.
 {¶ 52} Mr. Davis' first assignment of error is without merit.
 {¶ 53} Probable Cause for OVI
 {¶ 54} In his second assignment of error, Mr. Davis challenges the trial court's dismissal of his motion to suppress, arguing there was insufficient probable cause to establish he operated a motor vehicle while impaired. Specifically, he argues that because the police did not personally observe him operate the vehicle, and because they did not arrive at his home until "forty-minutes" later, there was no evidence to indicate he was impaired at the time of the accident. We find this argument to be without merit.
 {¶ 55} "At a hearing on a motion to suppress, the trial court functions as the trier of fact and, therefore is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses." Maloney at ¶ 19, citing McGary at ¶ 20, citing Molek at ¶ 24, citing Mills at 366; see, also, State v.Mustafa, at 3-4. "Thus, `[a]n appellate court must accept the findings of fact of the trial court as long as those findings are supported by competent, credible evidence.'" Id., citing McGary at ¶ 20, citingRetherford at 592; Nethken at ¶ 13. "After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met." Id.
 {¶ 56} The trial court dismissed Mr. Davis' motion to suppress, finding sufficient probable cause existed to believe that Mr. Davis was operating a motor vehicle while *Page 15 
impaired. The court reasoned that while the police did not actually see Mr. Davis driving, there was more than enough evidence that he collided with a parked car while accelerating at a high rate of speed out of a bar parking lot, and that he then drove off despite the damage to his car and the two parked vehicles. Mr. Davis called the police to report the accident some ten minutes later, falsely reporting that another car had struck him causing an accident. He claimed he had to flee the scene in an effort to give chase. It was this evidence, combined with the odor of alcohol, bloodshot eyes, slurred speech, and belligerent manner that aroused Ptlm. Anderson's suspicions that Mr. Davis had been driving while intoxicated. Upon further examination by way of field sobriety tests, Ptlm. Anderson concluded that Mr. Davis had indeed been operating his motor vehicle while impaired, as Mr. Davis failed the two field sobriety tests that were administered.
 {¶ 57} We have previously held that an officer does not have to personally observe the person driving while impaired, where, as in the instant case, there is more than enough evidence that the suspect was under the influence of alcohol while operating his motor vehicle. InState v. Heiney, 11th Dist. No. 2006-P-0073, 2007-Ohio-1199, we found there was sufficient evidence to establish probable cause that the appellant was driving while impaired. The circumstantial evidence inHeiney revealed that the appellant's eyes were bloodshot, she had a strong odor of alcohol on her breath, she failed the HGN test, she admitted to drinking three alcoholic beverages, and she caused a single-vehicle accident. Ms. Heiney further evidenced her impairment by fleeing the scene. Although the officer did not personally observe her driving while impaired, the totality of circumstantial and direct evidence was sufficient to establish *Page 16 
probable cause. "`[C]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.'" Id. at ¶ 17, quotingState v. Biros (1997), 78 Ohio St.3d 426, 447, quoting State v.Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus.
 {¶ 58} Similarly, in State v. Hummel, 154 Ohio App.3d 123,2003-Ohio-4602, we reversed the suppression of the evidence because there was sufficient evidence the driver was driving intoxicated although the trooper did not personally observe the appellant driving. Because the appellant smelled of alcohol, his eyes were glassy, he exhibited slurred speech, and an unexplained motor vehicle accident had occurred, we determined sufficient probable cause existed that the appellant was driving a motor vehicle while impaired. Thus, we held that "a police officer has probable cause to arrest for driving under the influence where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the accused had operated the vehicle while under the influence. In making this determination, each drunk driving case must be decided on its own particular and peculiar facts." Id. at ¶ 30.
 {¶ 59} Applying this test to the instant case, it is clear that Ptlm. Anderson had probable cause to arrest Mr. Davis for driving under the influence, as even with Mr. Davis' denial of drinking any alcohol, he had admittedly just left a bar, caused an accident with parked cars, and then recklessly drove out of the parking lot, fleeing the scene in his damaged vehicle, and then called 911 with an absurd story as to causation. When the police arrived on the scene, there was more than sufficient indicia of impairment as his speech was slurred, his eyes were bloodshot and glassy, he smelled *Page 17 
of alcohol, and he was belligerent and uncooperative. Then, he displayed two out of a possible four clues of impairment on the one-leg stand test, and six out of six clues on the HGN test. At that point, probable cause clearly existed for his arrest.
 {¶ 60} "`When a police officer arrives at the scene of an accident, shortly after its occurrence, discerns an odor of alcohol on the suspect, and the suspect admits to having driven the vehicle, the police officer has probable cause to arrest that individual for driving under the influence.'" Id. at ¶ 31, quoting State v. Lyons (June 11, 1999), 11th Dist. No. 97-P-0122, 1999 Ohio App. LEXIS 2623, 6.
 {¶ 61} Mr. Davis does not contest the fact that he caused the accident. Indeed, he admits that he caused the accident and subsequently lied to the police. Despite his denial to Ptlm. Anderson that he had not been drinking, the evidence presented both during the hearing on the motion to suppress and the jury trial reveals Mr. Davis had been drinking heavily that day. The "dash cam" videotape documents that Mr. Davis was unsteady on his feet. He can be seen continually cajoling and threatening the officers in an effort to convince them to abandon the field sobriety tests. During the entire length of the initial stop and subsequently at the station, where he was again obnoxious and uncooperative, he insisted that another car struck him. Quite simply, the videotape belies Mr. Davis' protestations that he was not intoxicated as his speech was thick and slurred, and he visibly lacked coordination, not to mention his outrageous behavior and belligerent comments.
 {¶ 62} Thus, Mr. Davis' argument that there is no evidence that he was driving impaired because the accident occurred at 9:10 p.m. and the police did not arrive at his home until 9:46 p.m., some thirty-six minutes later, is simply without merit in light of all *Page 18 
the other evidence presented. We agree with the trial court that thirty-six minutes is surely not too great of a period of time for the effects of drinking heavily throughout the day to dissipate.
 {¶ 63} "[A]n officer may legally arrest an individual for operating a motor vehicle under the influence, even without observing the operation of the vehicle, where the officer could reasonably conclude the driver had been operating the vehicle shortly before the officer arrives."City of Wickliffe v. Kirara, 11th Dist. No. 2006-L-172, 2007-Ohio-2304, ¶ 27, citing Wickliffe v. Dust, 11th Dist. No. 2006-Ohio-2017, ¶ 11, citing Oregon v. Szakovits (1972), 23 Ohio St.2d 271, 274. Moreover, "probable cause is based upon the arresting officer's knowledge and perceptions existing at the time of arrest. The unexplained accident, odor of alcohol, and slurred speech, lead to a reasonable inference of probable cause." Hummel at ¶ 35; see, also, State v. Kearney (July 15, 1983), 11th Dist. No 3177, 1983 Ohio App. LEXIS 12622, 4-5.
 {¶ 64} Quite simply, there is more than enough evidence under the totality of the circumstances that probable cause existed to arrest Mr. Davis for operating a motor vehicle while impaired.
 {¶ 65} Mr. Davis' second assignment of error is without merit.
 {¶ 66} Sufficiency of the Evidence
 {¶ 67} In his third assignment of error, Mr. Davis alleges that the trial court should have granted his Crim. R. 29 motion for acquittal because the evidence is insufficient to support his conviction. Specifically, he contends that the state failed to prove beyond a reasonable doubt that Mr. Davis was impaired when he drove the motor vehicle. This assignment of error is wholly merit. *Page 19 
 {¶ 68} "As this court stated in State v. Schlee (1994), 11th Dist. No 93-L-082, 1994 Ohio App. LEXIS 5862, 13, the standard of review for a sufficiency of the evidence claim is `whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found from all the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *' (Citations omitted.) `In essence, sufficiency is a test of adequacy[;] [w]hether the evidence is legally sufficient to sustain a verdict * * *.'" State v. Reeds, 11th Dist. No. 2007-L-120, 2008-Ohio-1781, ¶ 70, citing State v. Pesec, 11th Dist. No. 2006-P-0084, 2007-Ohio-3846, ¶ 45, citing State v. Thompkins (1997),78 Ohio St.3d 380, 386. "Thus, sufficiency of the evidence tests the burden of production." Id., citing Pesec, citing Thompkins at 390.
 {¶ 69} Mr. Davis challenges the sufficiency of the evidence that he was "appreciably impaired" at the time he drove the vehicle from the Wright Place to his home approximately ten minutes away.
 {¶ 70} The evidence presented by the state, however, is more than sufficient to sustain a finding that Mr. Davis had been heavily drinking before he drove his vehicle. Specifically, the state presented evidence of his impairment just before he left the bar in his Mercedes. His former girlfriend and a bartender at the Wright Place, Erica Wilson, testified that she personally served him four Budweisers. His unpaid tab showed that he ordered three Olives Cherry, a vodka-type drink, as well as one shot of Jagermeister. *Page 20 
 {¶ 71} Mr. Davis argues that three witnesses stated he was merely angry and not intoxicated, as the state contended. Our review of the record reveals only one witness testified that Mr. Davis was not intoxicated. Specifically, defense witness, Ms. Wilson, testified that she knew Mr. Davis was not drunk as she has known him for five years and has witnessed him drunk in the past. This argument goes to the manifest weight of the evidence, not to the sufficiency of the evidence presented. "In reviewing the sufficiency of the evidence, the relevant inquiry is whether the state has presented evidence on each element of the crime. In contrast, * * *, manifest weight contests the believability of the witnesses." Reeds at ¶ 82, citing State v. Johnson, 11th Dist. No. 2006-L-259, 2007-Ohio-5783, at ¶ 35.
 {¶ 72} The state, however, presented uncontroverted evidence that Mr. Davis had been drinking copious amounts of alcohol before he got into his vehicle, caused an accident, and then recklessly fled the scene. Moreover, as we noted in our analysis of the second assignment of error, there was more than enough evidence of his impairment once the officers arrived at his residence after his false report that another vehicle caused the accident at the Wright Place, some ten minutes earlier. Although the police arrived at his home thirty-six minutes later, we, too, are not convinced that this was enough time to dissipate the effects of heavily drinking throughout the day. Ptlm. Anderson testified that he observed Mr. Davis' eyes to be bloodshot and glassy, his speech was slurred, he had the odor of alcohol emanating from his person, and he was belligerent and uncooperative. Then, he displayed multiple clues of intoxication on both field sobriety tests, thus, confirming the suspicion that he was indeed impaired. A viewing of the police videotape leaves no doubt that Mr. Davis was intoxicated. *Page 21 
 {¶ 73} In any case, "[i]n analyzing a motion for acquittal, the reviewing court is bound to view the evidence presented in a light most favorable to the state, not to assess the credibility of the witnesses." Id. at ¶ 81, citing Johnson at ¶ 34, citing Jenks at 273. The state more than met its burden of producing evidence that Mr. Davis was driving intoxicated at the time he left the bar.
 {¶ 74} Mr. Davis third assignment of error is without merit.
 {¶ 75} Manifest Weight of the Evidence
 {¶ 76} Lastly, Mr. Davis challenges the manifest weight of the evidence, arguing that the verdict is not supported by competent, credible evidence that proves his guilt beyond a reasonable doubt. He argues that the jury lost its way because the evidence could very well establish that his anger, rather than "an appreciable impairment" of alcohol, was the cause of the events. He argues that although several witnesses stated he was drinking, none of them suggested that he was drunk. Further, he argues that his subsequent treatment by the police and their investigation of his intoxication was a result of a breakdown in communication due to his anger from the accident. We find this argument to be without merit.
 {¶ 77} "When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered." State v. Armstrong, 11th Dist. No. 2007-G-2756,2007-Ohio-6405, ¶ 15, citing Pesec at ¶ 74, *Page 22 
citing State v. Floyd, 11th Dist. No. 2005-T-0072, 2006-Ohio-4173, ¶ 8, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,Thompkins at 387.
 {¶ 78} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at ¶ 16, citing Pesec at ¶ 75, citing Floyd at ¶ 9, Martin at 175. "The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion." Id., citing Floyd at ¶ 9, citing Thompkins at 390 (Cook, J., concurring.) "The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses." Id., citing Floyd at ¶ 9, citingState v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 79} Based upon the evidence and testimony that the state presented, we cannot conclude that the jury lost its way or created a manifest miscarriage of justice when it convicted Mr. Davis of one count of operating a motor vehicle while under the influence of alcohol. The evidence reflects that Mr. Davis left the bar abruptly after having a loud argument in the parking lot with Ms. Wilson, in which threatening and vulgar language was used, that he got into his vehicle, had some words with the manager of the bar, who had also come outside to investigate, and then he sped crazily out of the crowded parking lot. As he turned the corner, eyewitness Leslie Weidenkopf, saw him strike a parked Lexus, which forced the Lexus to crash into another parked car, a Toyota Rav4, with such intensity that it shattered its back window and bended the frame of the backdoor. In front of witnesses, Mr. Davis then fled the scene, trailing radiator fluid in his wake. *Page 23 
 {¶ 80} Ten minutes later, Mr. Davis called 911, falsely reporting that another vehicle had damaged his and that he had tried to give chase. When police arrived at his home, he was standing by his damaged vehicle, with bloodshot eyes, smelling of alcohol, and slurring his speech, acting in an extremely defensive and belligerent manner. After displaying clues of intoxication in two field sobriety tests, he was arrested.
 {¶ 81} On the way to the station, Ptlm. Anderson swung by the Wright Place, where eyewitnesses identified Mr. Davis as the driver of the black Mercedes, despite his attempt to turn his head, while giving the witnesses "the bird" (extending his middle finger in an obnoxious manner.) When he arrived at the station, an attempted BAC test failed due to his obstinate refusal to correctly follow the officer's directions. Finally, the parties stipulated to the jury that Mr. Davis had three previous OVI convictions within the past six years.
 {¶ 82} The conviction is supported by the weight of the evidence. The very fact that he hit a parked car and drove away in such a reckless manner does not favor a finding that he was not intoxicated as surely this is evidence of a loss of control.
 {¶ 83} We defer to the trier of fact the determination as to whether this loss of control was simply due to his "anger" and not intoxication since "[i]t is well-settled that when assessing the credibility of witnesses, `[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" Id., citing State v. McKinney, Jr., 11th Dist. No. 2006-L-169, 2007-Ohio-3389, ¶ 49, citing State v. Grayson, *Page 24 
11th Dist. No. 2006-L-153, 2007-Ohio-1772, ¶ 31, citing State v.Awan (1986), 22 Ohio St.3d 120, 123.
 {¶ 84} There is nothing to suggest the jury lost its way or that such a manifest miscarriage of justice occurred that a new trial is warranted. Surely there was more than enough evidence in this case from which the jury could find that Mr. Davis was legally impaired at the time he operated his motor vehicle.
 {¶ 85} Mr. Davis' fourth assignment of error is without merit.
 {¶ 86} The judgment of the Lake County Court of Common Pleas is affirmed.
DIANE V. GRENDELL, P.J., concurs in judgment only,
COLLEEN MARY O'TOOLE, J., concurs in part, dissents in part with Concurring/ Dissenting Opinion.